

John Burton, State Bar No. 86029
LAW OFFICES OF JOHN BURTON
414 South Marengo Avenue
Pasadena, California 91101
Telephone: (626) 449-8300
Facsimile: (626) 449-4417
E-Mail: jb@JohnBurtonLaw.com

Jason D. Cohn, State Bar No. 192618
Saar Swartzon, State Bar No. 198732
COHN & SWARTZON, P.C.
1851 East First Street, Suite 1250
Santa Ana, California 92705
Telephone: (714) 547-5100
Facsimile: (714) 547-5424
E-Mail: Jason@CandS-Law.com

Attorneys for Plaintiff LARRY JAMES WRIGHT by and through his Guardian ad Litem, Gloria Blakely

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

LARRY JAMES WRIGHT, by and through his Guardian ad Litem, Gloria Blakely,

Plaintiff,

v.

COUNTY OF SAN BERNARDINO, SAN BERNARDINO SHERIFF'S DEPARTMENT, SHERIFF-CORONER ROD HOOPS, SHERIFF'S DEPUTIES KARI KLAUS, MARK LEWIS, KEVIN WARNER, SAN BERNARDINO COUNTY PROBATION OFFICER POINDEXTER, AND DOES 1 THROUGH 10, Inclusive,

Defendants.

Case No. CV09-7057 VBF (RCx)

**COMPLAINT FOR DAMAGES**

1. 42 U.S.C. § 1983 (individual)
2. 42 U.S.C. § 1983 (entity)
3. 42 U.S.C. §§ 12131*et seq.*
4. 29 U.S.C. § 794 *et seq.*
5. Cal. Civil Code §§ 51, 51.7, 52, 52.1 and 54

**DEMAND FOR JURY TRIAL**

**JURISDICTION AND VENUE**

1. This is a police misconduct action for damages pursuant to 42 U.S.C. § 1983, joined with damages claims under the Americans with Disability Act (ADA) and the Rehabilitation Act of 1973, as well as supplemental state claims.

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343(3) (civil rights). Venue lies in the Central District of California, Eastern Division, the judicial district in which the claim arose, pursuant to 28 U.S.C. § 1391(b). Plaintiff's state-law claims for relief are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

**PARTIES**

3. Plaintiff Larry James Wright is, and at all relevant times mentioned herein was, a disabled adult, residing in the City of Adelanto, County of San Bernardino, State of California, who suffers from a Traumatic Brain Injury (TBI).

4. TBI is a nondegenerative, noncongenital insult to the brain from an external mechanical force, which in some cases, including plaintiff's, leads to significant permanent impairment of cognitive, physical, and psychosocial functions, with an associated diminished or altered state of consciousness.

5. Because of a severe lack of mental capacity due to TBI, Plaintiff brings this action through his natural mother and Guardian ad Litem, Gloria Blakely. Both are of African-American heritage.

6. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOE Defendants 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when same shall have been ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the acts and/or omissions of said fictitiously named defendants.

7. Defendant, the COUNTY OF SAN BERNARDINO (hereinafter "COUNTY"), is a public entity duly organized and existing under and by virtue of the laws of the State of California. For the purposes of this action and in said capacity, Defendant COUNTY is responsible for and administers the defendant San Bernardino

Sheriff's Department ("SBSD"), which in turn promulgates policies and practices for patrolling and policing various areas of San Bernardino County, including, but not limited to, the City of Adelanto. COUNTY, through its component departments, and defendant Rod HOOPS, as sheriff-coroner of San Bernardino County ("HOOPS"), runs, operates, oversees, administers, supervises, and is otherwise responsible for the conduct of SBSD deputies, including both acts and omissions of SBSD deputies, employees, and agents and other SBSD and COUNTY workers, including probation officers. HOOPS is sued herein in both his official and individual capacities. At all times COUNTY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting all facets of the training, supervision, control, employment, assignment and removal of individual members of the SBSD, including those individuals charged with patrolling and policing the community, and to assure that said actions, policies, rules, regulations, practices and procedures of the SBSD and its employees and agents comply with the laws and constitutions of the United States and of the State of California.

8. COUNTY Sheriff Deputies, Defendants KARI KLAUS, MARK LEWIS, KEVIN WARNER and Defendants Does 1 through 5, inclusive ("DEFENDANT DEPUTIES"), along with Defendant San Bernardino County Probation Officer POINDEXTER and Does 6 through 10, inclusive ("DEFENDANT PROBATION OFFICERS"), are and were at all times relevant herein, deputies officers, sergeants, captains, commanders, supervisors and/or civilian employees, agents, and representatives of SBSD and/or COUNTY, acting within their capacity as employees, agents, and servants of Defendant COUNTY; and said Defendants, at all times alleged herein, were acting within the course and scope of that employment and agency. Said Defendants are sued individually and in their capacity as police officers, sheriff's deputies, sergeants, captains, lieutenants, commanders, supervisors and/or other officers, employees, agents or representatives for SBSD and the COUNTY.

9. At all times relevant herein, DEFENDANT DEPUTIES, DEFENDANT PROBATION OFFICERS their supervisors, and various sergeants, lieutenants, captains, commanders, and others in supervisory positions, were acting under color of law, under the color of the statutes, ordinances, regulations, policies, customs, practices, and usages of Defendant COUNTY, its SBSD, and the State of California.

10. At all times relevant hereto, DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS employed and organized unlawful and illegal customs and practices of excessive force and intentionally caused emotional distress upon innocent victims. Said misconduct was known by, encouraged, tolerated and/or condoned by Defendant COUNTY.

11. At all times relevant herein, DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS were acting within the course and scope of their employment as peace officers and employees of the COUNTY, which is liable under the principles of *respondeat superior* for said employees' tortious conduct pursuant to California Government Code § 815.2.

12. Plaintiff has exhausted the applicable administrative remedies for suing public entities and employees in the State of California and files this action timely.

## FACTS

### A. General Allegations re County and SBSD Policies and Practices

13. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that COUNTY and SBSD, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, or customs of, among other things,

a. Not training SBSD deputies and officers in the signs and symptoms of individuals with TBI or other mental disabilities, training deputies that what appears to be inappropriate behavior by an individual with TBI or other mental

disability might in fact be unintended or unconscious movement, actions or conduct, training deputies that individuals with TBI or other mental impairments may have extreme difficulty in interacting with other people including interactions with sheriff's deputies, training deputies that individuals with TBI or other mental impairments may have extreme difficulty understanding and following commands and directions, training deputies that they should not summarily arrest individuals with TBI or other mental impairments, and then charge them with crimes without taking into account the disability and the behavioral problems it engenders, and training officers that they should not use fists, boots, metal ASP batons, TASER electronic control devices (ECDs) and other potentially lethal, or excruciatingly painful, uses of force to control helpless individuals with TBI or another mental impairment.

b. Unreasonably subjecting persons, including individuals with TBI, to metal ASP batons, closed fists, kicks, chemical agents, ECD shocks, and other forms of unreasonable or excessive force;

c. Subjecting persons, including individuals with TBI to unreasonable criminal investigations, interrogations and false arrest to cover up uses of excessive force;

d. Selecting, retaining, and assigning deputies and officers with demonstrable propensities for excessive force, false arrest, and other misconduct;

e. Failing to adequately train, supervise, and control officers in the arts of law enforcement, including dealing with individuals with TBI and other mental impairments;

f. Failing to adequately investigate and discipline deputies and officers involved in misconduct; and

g. Condoning and encouraging deputies in the belief that they can violate the rights of persons such as Plaintiff in this action with impunity, and that such

conduct will not adversely affect their opportunities for promotion and other employment benefits.

14. Plaintiff is informed and believes and thereupon alleges that the official policy makers for the SBSD knew or reasonably should have known that SBSD deputies and officers use ASP batons and ECDs improperly, and otherwise use excessive force against individuals, including mentally disabled people such as plaintiff, and then investigate them and arrest them and charge them with crimes, all without probable cause, to cover up for misconduct. Despite this knowledge, defendants failed to take any steps to remedy these violations of constitutional and statutory authority, as well as of the SBSD's own written policies, through adequate hiring, training, supervision and monitoring. In so doing, defendants COUNTY and SBSD exhibited deliberate indifference to the constitutional rights of Plaintiff and others similarly situated.

15. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that defendants COUNTY and SBSD authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff.

**B. The Incident.**

16. Plaintiff, who is an adult in his thirties, was born a relatively healthy, normal child. When Plaintiff was approximately 9 months old, however, he was ejected from an automobile in a collision and suffered a traumatic brain injury rendering him severely mentally disabled. As Plaintiff grew, he was enrolled in special education classes and was even involved in the Special Olympics. Due to Plaintiff's disability, he is unable to care of himself and therefore, lives with his mother/Guardian

ad Litem, Gloria Blakely. He has the cognitive abilities and demeanor of a young child. He is very sweet but incapable of processing information as would an older child or adult.

17. Due to Plaintiff's severe mental disability but gentle and happy demeanor, he is relatively well known and liked the local community where he resides. In fact, Plaintiff was and is known to the local patrolling SBSD deputies and used to exchange waves with them as they drove by in their patrol vehicles.

18. On or about September 12, 2008, DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS, implementing a plan to conduct random, warrantless searches, arrived outside of Plaintiff's home to search the residence he shares with his mother, Gloria Blakely. Defendants could do so without a warrant because at the time Ms. Blakely was enrolled in a substance abuse and rehabilitation program under the Substance Abuse and Crime Prevention Act, also known as Proposition 36. Under the terms of this program, Ms. Blakey was required to submit to search of her residence.

19. When signing up for the Proposition 36 program, Gloria Blakely notified the SBSD Probation Department that she was the caretaker for, and lived with Plaintiff, and specifically notified the SBSD probation department that Plaintiff suffered from a severe mental disability.

20. When DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS arrived at the residence, they knocked on the front door but there was no answer. DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS began to circle the residence with guns drawn, pounding on windows and yelling inside. Plaintiff was inside the residence. He followed his mother's instructions not to open the door for anyone, as his mother was not home at the time.

21. As DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS continued to pound on the windows with guns drawn and threaten entry, a neighbor told them to be careful because there was a "retarded man" or a "mentally

handicapped man" who lived inside. In response, DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS yelled obscenities at the neighbor and ordered in to go back inside his residence or be arrested.

22. DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS rushed into the house, where they yelled verbal commands at Plaintiff which Plaintiff was unable and did not understand.

23. DEFENDANT KLAUS then attempted to handcuff Plaintiff by repeatedly grabbing Plaintiff's arm, but Plaintiff did not understand that he was being arrested even when told so by DEFENDANT KLAUS. DEFENDANT KLAUS became enraged and began beating Plaintiff, striking his left side numerous times, and delivering powerful blows to Plaintiff's right stomach area with his knee. DEFENDANT LEWIS also became enraged and beat Plaintiff, grabbing his left arm and striking Plaintiff in the back of his knee. DEFENDANT WARNER joined in, and by his own admission struck Plaintiff in the stomach and side with his right knee seven times. DEFENDANT DEPUTIES and DEFENDANT PROBATION OFFICERS were hitting and striking Plaintiff with such force that one of the kicks missed Plaintiff and made a hole in the wall. Furthermore, DEFENDANT WARNER deployed his TASER into Plaintiff's back, shocking Plaintiff repeatedly. DEFENDANT WARNER continuously shocked Plaintiff with the TASER as the other DEFENDANT DEPUTIES AND DEFENDANT PROBATION OFFICERS tackled Plaintiff to the floor. DEFENDANT WARNER used his ASP baton and, by his own admission, struck Plaintiff in the side and shoulder area eight times as DEFENDANTS KLAUS AND LEWIS continued to hit Plaintiff. Moreover, DEFENDANT WARNER struck Plaintiff's head above the hairline with his ASP baton.

24. As if DEFENDANT DEPUTIES AND DEFENDANT PROBATION OFFICERS had not violated Plaintiff enough, DEFENDANT DEPUTIES AND DEFENDANT PROBATION OFFICERS instructed Plaintiff not to tell anyone what happened but instead, state that he had fallen down the stairs of the residence.